Hillsborough,
No. 4870.

CLARENCE G. BLEVENS & a. v. MANCHESTER.

Argued March 7, 1961.
Decided April 28, 1961.

*Emile R. Bussiere* (by brief and orally), for the plaintiffs.

*J. Francis Roche,* city solicitor (by brief and orally), for the defendant.

KENISON, C. J. The power of the State to pass enabling legislation permitting municipal ordinances to regulate the subdivision of land has been sustained generally as a proper exercise of the police power. Anno. 11 A. L. R. 2d 524; Webster, Urban Planning and Municipal Public Policy, ch. 9 (1958); Note, Land Subdivision Control, 65 Harv. L. Rev. 1226 (1952). "Since the subdivision of a large tract of land into a number of small building lots and the development thereof, either for residential or industrial purposes increases the value of the land in the aggregate to the subdivider and at the same time imposes new burdens upon the municipality and, if uncontrolled, upon other elements in the community, the validity of imposing a duty upon the subdivider to comply with reasonable conditions relating to location, site plan, location of and width of roads and sidewalks, the installation of necessary storm drains and sewers, and to restrictions on lot sizes so that the subdivision will conform to the local requirements for the safety, health and general welfare of the subsequent owners of the individual lots therein and of the community has been generally recognized." 2 Rathkopf, The Law of Zoning and Planning, c. 71, s. 9 (1960).

Statutes, like RSA 36:19-29, regulating the subdivision of land seek to promote the orderly and planned growth of relatively undeveloped areas within a municipality. *Brous* v. *Smith,* 304 N. Y. 164; Rhyne, Municipal Law ss. 32-60 (1957); Reps, Control of Land Subdivision by Municipal Planning Boards, 40 Cornell L. Q. 258 (1955). Planless growth and haphazard development accentuate municipal problems in the demand for streets, water and sanitary services which have a direct relation to traffic safety and health. 6 Powell, Real Property, s. 866 (1958); *Stoneham* v. *Savelo,* (Mass.) 170 N. E. 2d 417; *State ex rel Jack* v. *Russell,* 162 Ohio St. 281; *Petterson* v. *Naperville,* 9 Ill. 2d 233. The subdivision of land has a definite economic impact upon the municipality and hence the regulation of subdivision activities has been sustained as a means by which the interests of the public and the general taxpayer may be safeguarded and protected. Since the subdivider of land creates the need for local improvements which are of special benefit to the subdivision, it is considered reasonable that he should bear the cost rather than the municipality and the general taxpayer. Haar, Land-Use Planning, 347-351 (1959); *Zastrow* v. *Brown Deer,* 9 Wis. 2d 100; Comment, 1961 Wis. L. Rev. 310, 312; *Lynbrook* v. *Cadoo,* 252 N. Y. 308, 314.

The plaintiffs' contention that "the police power is not involved"

in this litigation cannot be accepted. The fact that the lot areas may be satisfactory to the subdivider and prospective purchasers, or that the streets and drainage are also satisfactory to them does not bar the application of the subdivision statute and the ordinance enacted pursuant to it. Note, An Analysis of Subdivision Control Legislation, 28 Ind. L. J. 544 (1953). "One of the problems that has arisen is that of seeing to it that building lots are not laid out and sold and houses put thereon without some decent minimum of street paving and without some decent safety and health minimum of water and sanitary facilities. We all know that where subdivision of land is unregulated lots are sold without paving, water, drainage, or sanitary facilities, and then later the community feels forced to protect the residents and take over the streets and in some way or other provide for the facilities. One of the ways in which law and legislation are attempting to prevent just such situations is that of requiring paving, water, and drainage facilities to be installed, up to minimum public specifications, as a condition of approval of the plat. By means, therefore, of this city planning approach and technique and these developments in modes of subdivision regulation, and evils of the inharmonious street system, overcongestion of population, and deficiency in paving and sanitation and water facilities are coming to be reduced and prevented." Bettman, City and Regional Planning Papers 74 (1946).

The plaintiffs' basic contention is that the subdivision law and the ordinance enacted pursuant thereto are "retrospective laws" forbidden by N. H. Const., Pt. I, *Art.* 23rd. The pertinent part of RSA 36:27 reads as follows: "Whoever, being the owner or agent of the owner of any land located within a subdivision, transfers or sells or agrees to sell or negotiates to sell any land by reference to, or exhibition of, or by other use of, a plat of a subdivision, before such plat has been approved by the planning board and recorded or filed in the office of the appropriate register of deeds shall forfeit and pay a penalty of one hundred dollars for each lot or parcel so transferred or sold or agreed or negotiated to be sold . . . . "

The subdivision law and ordinance apply to all of the plaintiffs' lots shown on their recorded maps which are unsold and any conveyed after the subdivision ordinance was approved by the city. This is not a retrospective law. *Lake Intervale Homes, Inc.* v. *Parsippany-Troy Hills,* 28 N. J. 423; *Opinion of the Justices,* 101 N. H. 515; *Rochester* v. *Barcomb,* 103 N. H. 247 (decided

April 4, 1961); *Pepin* v. *Beaulieu*, 102 N. H. 84, 89. It is admitted that most of the petitioners' streets have not been formally accepted by the city of Manchester. See RSA 230:1; *Harrington* v. *Manchester*, 76 N. H. 347, 350; *Wason* v. *Nashua*, 85 N. H. 192. The provisions of the subdivision law that no building permit shall be issued unless the street "shall have been accepted or opened as or shall otherwise have received the legal status of a public street prior to that time" (RSA 36:26(a)) applies to streets and highways as defined in RSA 230:1. The subdivision law also applies to the layout of highways in subdivisions of the city which have been approved as provided in Laws 1915, *c.* 326. RSA 36:29. Hence the fact that the plaintiffs have recorded plans approved under a prior statute, which show "paper streets" or unaccepted streets or that some lots previously sold are upon accepted streets give the plaintiffs no vested right to demand that future sales shall be beyond the purview of the subdivision law and ordinance. What may have been an adequate proposed development when the plaintiffs' plan was first recorded may be clearly insufficient to municipal needs today. *Mansfield & Swett* v. *West Orange*, 120 N. J. L. 145; 1 Yokley, Zoning Law and Practice (2d *ed.* 1953) *s.* 116; Johnson, Constitutional Law and Community Planning, 20 Law and Contemporary Problems 199 (1955).

The subdivision ordinance is attacked on the ground it is arbitrary and discriminatory. At the corner of Fairfield Street and Blevens Drive as shown on the plaintiffs' map are four lots, Nos. 145, 219, 232 and 146. The first two are owned by individual owners, the third is admittedly not subject to the subdivision ordinance while the fourth owned by the plaintiffs is subject to the ordinance. These lots are beyond the portion of Fairfield Street which has been accepted by the city, and as shown by the plan, lot 146 is situated in an unimproved block of twelve lots wholly surrounded by unaccepted streets. If the plaintiffs must under the ordinance supply municipal services for that lot, it will in effect be beneficial to the other lots not subject to the subdivision regulation. This is the price of progress in any attempt to improve land development, subject however to any right to relief because of "practical difficulty or unnecessary hardship" as provided by RSA 36:26. It is no different from the effect of zoning generally where certain property may be zoned in one class and a contiguous property in another. The city must have a starting point for any new law or ordinance and it is not discriminatory merely because

every lot of land is not regulated in the same degree. Fagin, Regulating the Timing of Urban Development, 20 Law and Contemporary Problems 298 (1955); Reps, Land Subdivision Regulation in Int'l City Managers Ass'n, Local Planning Administration 345-368 (3d *ed.* 1959). The Trial Court has found that there has been no discrimination against the plaintiffs and the record supports that finding.

It is contended that the subdivision law and ordinance is unreasonable and contrary to public policy. Planning for land use has "become an accepted part of municipal law." Savage, Land Planning and Democratic Purposes, 34 Notre Dame Law. 65, 66 (1958). See 1 McQuillin, Municipal Corporations (3d *ed.* 1949) *s.* 1.118. The ordinance contemplates that a plat may be submitted for approval which covers "only a part of the subdivider's entire holding," in which case a sketch of prospective future streets "of the unsubmitted part shall be furnished." A subdivider may thus avoid the expense of improving more land than will be immediately required. Both the statute and the ordinance provide for the granting in proper cases of exceptions, or variances from the literal enforcement of the regulations, to avoid "undue hardship" or "practical difficulty or unnecessary hardship." RSA 36:26. See Webster, Urban Planning & Municipal Public Policy, *supra, pp.* 486, 487. Thus flexibility in applying the regulations to partially developed subdivisions is provided for. Certain lots owned by the plaintiffs were acquired by them as individual lots from a previous subdivider. As to them, the statute appears to be inapplicable. RSA 36:1 VIII.

We conclude that the subdivision law (RSA 36:19-29) and the Manchester ordinance which conforms to this law are valid and constitutional. What was said in 1954 by a unanimous court in *Berman* v. *Parker,* 348 U. S. 26, 33 is pertinent to this case: "The concept of public welfare is broad and inclusive . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled."

*Exceptions overruled.*

All concurred.