Strafford
No. 88-170

### ERNIE AND PATRICIA VACHON AND ROBERT AND PHYLLIS PAIGE

v.

### TOWN OF NEW DURHAM ZONING BOARD OF ADJUSTMENT

May 3, 1989

*Cooper, Hall, Whittum & Shillaber,* of Rochester (*Daniel J. Harkinson* on the brief and orally), for the plaintiffs.

*Nighswander, Martin & Mitchell P.A.,* of Laconia (*Walter L. Mitchell* on the brief and orally), for the defendant.

*H. Bernard Waugh, Jr.*, of Concord, by brief for New Hampshire Municipal Association, as *amicus curiae*.

BATCHELDER, J.   This is an appeal from a decree of the Superior Court (*McHugh*, J.) which upheld a decision made by the New Durham Zoning Board of Adjustment (ZBA) to deny the plaintiffs residential building permits for their separate but abutting parcels of land located in New Durham. For the reasons set forth below, we affirm.

In 1983, the plaintiffs purchased two separate abutting parcels of land located in New Durham. The parcel belonging to plaintiffs Ernie and Patricia Vachon contains approximately 45 acres, and the parcel belonging to plaintiffs Robert and Phyllis Paige contains approximately 88 acres. The Vachon property abuts and lies to the north of the Paige property. On their eastern sides, each property lies along the Old Webster Road, so-called. Neither property has frontage along any other road.

At a 1935 town meeting, New Durham voted to "close" Webster Road. The town has neither maintained nor placed gates and bars on Webster Road. A 1977 deed from Mary V. Fuller, tax collector of New Durham, to Douglas R. Woodward of property including that purchased by the Vachons in 1983 describes Webster Road as "discontinued." Webster Road runs roughly due north from Middleton Road, which is a class V or better road, as defined by RSA 229:5.

Sometime during the spring of 1986, the Vachons applied to the New Durham building inspector for a permit to build a single-family home on their Webster Road property. The building inspector refused to issue the permit, and directed the Vachons to the ZBA, which in turn referred them to the board of selectmen.

On September 2, 1986, the board of selectmen adopted a written policy regarding the construction of dwellings on class VI roads. Paragraph 5 of the town's policy provides:

"In order to minimize any potential development along a Class VI road with an accompanying drain on town services, and the increased cost to the town for these services, it is the policy of the board that no building permit shall be issued if the driveway access to the dwelling from a Class VI road is 600 feet or more from the intersection of said Class VI road and a Class V or better road."

The plaintiffs' properties are located along Webster Road and more than 600 feet from the nearest class V or better road. The plaintiffs offered to release the town from any obligation it has to the plaintiffs and their successors to maintain Webster Road, and also to release and discharge the town from any liability arising out of the condition of Webster Road so long as Webster Road falls below class V road standards.

The town refused to issue a building permit to the Vachons, and the building inspector informed the Paiges that they need not formally apply for a building permit for their property because it would be automatically denied for the same reason as the Vachons' application. The plaintiffs then jointly appealed the denial of their building permits to the ZBA.

On February 18 and March 19, 1987, the ZBA conducted hearings on those appeals. On March 20, 1987, the ZBA issued a written notice of its decision to deny the plaintiffs' appeals, with a copy of the September 2, 1986 class VI road policy attached. On April 7, 1987, the plaintiffs filed a motion for rehearing with the ZBA, which was denied on April 15, 1987. On April 22, 1987, the landowners filed a second motion for rehearing with the ZBA, because its earlier decisions failed to include a written statement of the reasons for its decision as required by RSA 674:41 and RSA chapter 677. On June 25, 1987, the ZBA issued a written notice of decision which reaffirmed and explained its denial of the plaintiffs' appeal.

In its written decision, the ZBA found that due to bare rocks, narrowness, swampy areas, ledge outcroppings, close bankings, and seasonal flooding, Webster Road was ". . . probably one of the worst . . ." class VI roadways in the town. The ZBA further found that police, fire, and rescue vehicles would have serious difficulties in reaching the properties, thus "creat[ing] a substantially increased risk for the inhabitants of such . . . proposed building[s], and an increased possibility of financial impact to the municipality in terms of increased liability or exposure to claims, injury to town employees and/or damage to Town equipment in trying to reach those properties in emergency situations, etc." The ZBA was not placated by the plaintiffs' offer of waiver. The ZBA also found that it would be inconsistent with the town's master plan to allow erection of the plaintiffs' buildings.

On July 28, 1987, the plaintiffs appealed the ZBA decision to the superior court. There the plaintiffs put forth several arguments as to why the ZBA improperly denied their appeals from the denial of building permits. First, the plaintiffs argued that since the town

had discontinued Webster Road without subjecting it to gates and bars, Webster Road had become a private right of way benefiting the plaintiff landowners as essentially a private driveway opening onto Middleton Road, a class V or better road, which would make the proposed building permissible under the town's class VI road policy. Secondly, the plaintiffs argued that because they were not subdividing their property, RSA 674:41 and the town's class VI road policy issued thereunder do not apply to these properties. Thirdly, plaintiffs argued that the application of the town's zoning ordinance and Class VI road policy to their lands constitutes an uncompensated taking of their property which denied them equal protection as guaranteed by both the New Hampshire Constitution, part I, article 12, and the fourteenth amendment of the United States Constitution, because property abutting class VI roads is unreasonably and arbitrarily classified into property within 600 feet of the nearest intersection with a class V or better road and property 600 feet or more from such an intersection. The plaintiffs also argued, in the alternative, that because the town's class VI road policy is expressly intended to minimize development and town expenses and is not a safety measure, it is not based on a compelling reason to interfere with the landowners' fundamental right to own, use, and enjoy their property, and it is thus an unconstitutional, uncompensated taking which denies the plaintiffs due process and equal protection of the law as afforded to them by the New Hampshire Constitution, part I, articles 2, 12 and 15 and the fourteenth amendment of the United States Constitution.

The town refuted the plaintiffs' contentions that the building inspector denied them permits based solely upon the fact that their property was located more than 600 feet from a class V road or the fact that their property was located on a class VI road. The town argued that its decision was properly based upon the provisions of the town's zoning and land use ordinance and RSA 674:41, and that it was neither unreasonable nor arbitrary because it was designed to protect public health and safety.

The trial court made factual findings that Webster Road was a class VI road and "that all the concerns raised by the Town about the condition of Webster Road and the safety of any occupants of homes located on it are valid." The court initially granted the plaintiffs' petition for appeal because it found that RSA 674:41 only applied to building permit requests accompanying a formal subdivision plan, but stated that the town would be free to accept or deny the plaintiffs' request for building permits under any other provision of its zoning ordinance. However, on motion for

reconsideration, the court was convinced by the town's arguments that RSA 674:41 applies to all building permits requested, not only those that accompany a formal subdivision plan, and therefore upheld the town's decision to deny the plaintiffs' applications for building permits. This appeal ensued.

On appeal here, the plaintiffs make the following arguments: (1) that the court erred in its finding that Webster Road remains a public road, and that Webster Road is instead a private road on a right of way owned by the abutters; (2) that RSA 674:41 does not authorize the town to refuse to issue building permits to them, because they are not subdividing their properties; (3) that the town's class VI road policy deprives the plaintiffs of equal protection of the law by denying them the fundamental personal right under both the State and Federal Constitutions to build and occupy homes on their land; and (4) that the town's class VI road policy is an unconstitutional, uncompensated taking of the plaintiffs' property and an unreasonable exercise of the town's police powers.

The plaintiffs also make much of the fact that they offered to sign a waiver releasing the town from any liability. The transcript of the testimony reveals that the plaintiffs offered an agreement to the town (which was an exhibit at trial), waiving rights to emergency services, school bus services, "maintenance responsibilities and liability arising out of a class VI road." The waiver argument was pressed both in the brief and at oral argument. The exhibit itself was, however, not transmitted to this court, and our knowledge of its substance is limited to references and passing comment to it in the record. Even if we were to assume that such a waiver would bind the plaintiffs and their successors, it would not help the plaintiffs in their present predicament. The plaintiffs could not immunize the town from any conceivable liabilities to third parties who for any reason might occupy the properties in question, and furthermore the waiver language contained in the relevant statute and ordinance is directed at roadway maintenance rather than the broad spectrum of liability which the plaintiffs' proffered agreement contemplates. To rule otherwise would allow applicants for building permits on Class VI highways to circumvent the discretionary review process required by RSA 674:41 by offering blanket releases to the town from general municipal liability which might arise from its maintenance of the highways in question.

■ Since the court's finding that Webster Road is a class VI road as opposed to a private road is supported by facts in the record, we will not overturn it. *See Belknap Textiles v. Belknap Industries, Inc.*, 121 N.H. 28, 30, 424 A.2d 1141, 1142 (1981) (we will not disturb the decision of the finder of fact unless it is clearly erroneous).

Local planning boards may not issue building permits for any lot unless the street giving access to the lot upon which such a building is proposed to be placed qualifies as a class V or better highway, is an approved street within the town, or is a class VI highway on which the municipality has voted to authorize permits for the erection of buildings, where the applicant has proved that the town has filed in the county registry of deeds notice that it assumes neither responsibility for maintenance of the road nor liability for damages resulting from its use. RSA 674:41, I. If the enforcement of these requirements "would entail practical difficulty or unnecessary hardship, and when the circumstances of the case do not require the building, structure or part thereof to be related to existing or proposed streets . . .," the applicant may make an appeal to the ZBA. RSA 674:41, II. The ZBA has the power to make reasonable exceptions in granting building permits, "if the issuance of the permit or erection of the building would not tend to distort the official map or increase the difficulty of carrying out the master plan upon which it is based, and if erection of the building or issuance of the permit will not cause hardship to future purchasers or undue financial impact on the municipality." RSA 674:41, II.

■ In its written decision of June 25, 1987, the ZBA upheld the selectmen's denial of the plaintiffs' request for a building permit because it could not make any of the findings required in order to grant the plaintiffs an exception under RSA 674:41, II. Both the ZBA and the court which reviewed its decision made factual findings which supported this decision. There are sufficient facts in the record to support these conclusions; hence, we will not overturn them.

The plaintiffs in this case also argue that since they do not propose to subdivide their properties, RSA 674:41 does not authorize the town to refuse to issue building permits to them. The plaintiffs base their interpretation of RSA 674:41 on the title, "Regulation of Subdivision of Land," which appears before RSA 674:35–42, and on references to this statutory section and its predecessor in two cases, *Glick v. Town of Ossipee*, 130 N.H. 643, 648–49, 547 A.2d 231, 235 (1988) and *Blevens v. City of Manchester*,

103 N.H. 284, 289, 170 A.2d 121, 124 (1961). We do not find the plaintiffs' arguments on this point compelling.

█ RSA 674:41 provides that "[f]rom and after the time when a planning board shall expressly have been granted the authority to approve or disapprove plats by a municipality . . . *no building shall be erected on any lot* within *any part* of the municipality nor shall a building permit be issued for the erection of a building unless . . . ." RSA 674:41, I (emphasis added). We hold that this statutory language clearly and unambiguously applies to all building permit applications, not just to subdivision applications. Therefore, we need not consider the title of the statutory provision in determining the meaning of the statute. *See State v. Kilgus,* 125 N.H. 739, 742, 484 A.2d 1208, 1212 (1984).

Furthermore, neither of the two cases relied upon by the plaintiffs held that section 41 or its predecessor is limited to building permits applied for in subdivisions. In *Glick v. Town of Ossipee,* we observed that "[t]he legislature's policy of permitting towns to restrict development on inadequate roads is reflected in . . . RSA 674:41." *Glick, supra* at 648, 547 A.2d at 235. Although in *Blevens* we did refer to RSA 36:19–29, the predecessor sections to those that now include RSA 674:41, as "the subdivision law," we did not find that the statutory language regarding sufficiency of streets for the issuance of building permits was limited to subdivision applications. *Blevens, supra* at 289, 170 A.2d at 124.

Since the court found that the ZBA relied upon the statute, and not just the town ordinance, to deny the plaintiffs' building permit requests, and since we find that the statute was properly applied to the plaintiffs' requests, we need not address the plaintiffs' constitutional arguments regarding the town's class VI road policy in this case. *See Bedford Residents Group v. Town of Bedford,* 130 N.H. 632, 638, 547 A.2d 225, 229 (1988).

*Affirmed.*

BROCK, C.J., did not sit; the others concurred.