## WALKER & als. v. CHEEVER & als.

The Supreme Judicial Court, as a court of equity, has full chancery powers, and will administer relief in all cases falling within equity jurisdiction, where the statutes of the State have not próvided other means of redress.

Equity will not be ousted of its jurisdiction because the courts of law have adopted equitable principles.

A court of equity will not take jurisdiction in the matter of an account, where the accounts are all on one side, and no discovery is sought or required.

A bill in equity can not be upheld against executors or administrators, merely upon the ground that they hold the estate of the deceased in trust; but a special case must be shown, calling for equitable relief.

The complainants, six in number, signed a joint and several note with four others, for $10.000, and paid the note. Two of the four paid to the complainants their proportion of the note, and one of the remaining two deceased, leaving the defendants as his executors and residuary legatees. Upon a bill filed against the defendants for contribution, it was *held*, that, notwithstanding the complainants had a remedy at law, yet the bill might be maintained, the subject matter being within the original jurisdiction of equity, and a multiplicity of suits being prevented by the bill.

IN EQUITY. The bill charges that the five complainants first named, together with William Plumer, (since deceased, and on whose estate the complainant William Plumer is administrator,) and Charles A. Cheever, John Knowlton, Thomas L. Tullock, and Josiah Stevens, on the 26th day of April, 1852, made their joint and several note for the sum of $10.000, payable to the Boston & Maine Railroad, or order, in six months from date, with interest; and delivered the same to the railroad: That the note was in fact made for the accommodation of the Portsmouth & Concord Railroad, and the money was advanced and delivered by the Boston & Maine Railroad to the Portsmouth & Concord accordingly:

That Charles A. Cheever died on the first day of September, 1852, testate; making the defendants his executors and residuary legatees; that his will was proved on the 9th day of November, 1852, and that the defendants were duly appointed his executors, and gave bond to pay debts and legacies:

That on the first day of July, 1854, the complainants were compelled to pay, and did pay, the note to the Boston and

Maine Railroad, and that Tullock and Knowlton have since paid to the complainants their several proportions of the same, leaving the sum of one thousand dollars each, with interest, due from Cheever and Stevens : That immediately after the payment of the note by the complainants, they made a demand upon the defendants to pay the proportion of Cheever, but that the same has not been paid : That, since the probate of the will of Cheever, the defendants have for the most part resided out of this State, so that the complainants " have not had the means or opportunity, for the space of time allowed by the statute and laws of this State in such cases, to prosecute their claim against the executors, at law or in equity, or to serve process on them."

That suits at law have been commenced against Stevens for the purpose of recovering from him his proportion of the note, but whether Stevens is solvent or not, or whether his share will be collected, the complainants are unable to say.

The bill prays that the defendants may come to a fair and just account with the complainants of the note aforesaid, and of the money paid thereon by the complainants, and of the interest, charges and expenses thereon, and of the fair and just share of the same to be paid out of the estate of said Cheever by the defendants ; and that the defendants may be required forthwith to pay the same to the complainants. There is also a prayer for general relief.

The defendants filed a demurrer to the bill, and alleged for cause —

1. That the case made by the bill does not come within the class of cases in which this court, as a court of equity, has jurisdiction.

2. That it appears by the bill that the plaintiffs can have as effectual and complete a remedy in the courts of common law in this State, as in a court of equity, and that such remedy in this case is clear and certain.

*Towle, Christie & Kingman*, for the defendants.

1. The court of equity has not a general but a limited juris-

diction. It derives its powers from a special statute therein, specifying the several classes of cases over which it shall have jurisdiction. Its jurisdiction is confined to such cases as are therein specified, and extends to no others. The case of contribution between co-sureties is not named as within the the chancery jurisdiction by the statutes of this State, but is so named by the statutes of Massachusetts. N. H. R. S., chap. 171, sec. 6 ; Massachusetts R. S., page 500 ; *Holland* v. *Cruft,* 20 Pick. 321–5 ; *May* v. *Parker,* 12 Pick. 34 ; *McGough* v. *Insurance Bank,* 2 Kelly 151 ; *Webster* v. *Clark,* 25 Maine 313 ; *Shapley* v. *Rangeley,* 1 W. & M. 213 ; *Norwich and Worcester Railroad Co.* v. *Story,* 17 Conn. 364; *Herrot* v. *Davis,* 2 W. & M. 229.

2. The bill does not state a case within the jurisdiction of this court. To maintain the jurisdiction for relief, as consequent on discovery, it is necessary, in the first place, to allege in the bill that the facts are material to the plaintiff's case, and that the discovery of them by the defendant is indispensable as proof; for if the facts lie within the knowledge of witnesses, who may be called in a court of law, that furnishes a sufficient reason for a court of equity to refuse its aid. The bill must, therefore, allege (and, if required, the fact must be established,) that the plaintiff is unable to prove such facts by other testimony. In the next place, if the answer wholly denies the matters of fact of which discovery is sought in the bill, the latter must be dismissed, for the jurisdiction substantially fails by such a denial. 1 Story's Eq., secs. 73, 74 ; *Gelston* v. *Hoyt,* 1 Johns. Ch. 543 ; *Seymour* v. *Seymour,* 4 Johns. Ch. 409 ; *Chase* v. *Palmer,* 25 Maine 341 ; *Merchants' Bank* v. *Davis,* 3 Kelby 112 ; *Hurd* v. *Duchess County Bank,* 2 Morris 291 ; *Bell* v. *Pomeroy,* 4 McLean 57.

3. The complainants should allege in their bill, either that they had not a good, adequate and sufficient remedy at common law, or, having such remedy, had exhausted it. *McGough* v. *Insurance Bank,* 2 Kelby 151; *Webster* v. *Clark,* 25 Maine 313 ; *Shapley* v. *Rangeley,* 1 W. & M. 213 ; *Barrett* v. *Sargent,* 18

Vt. 365 ; *Webster* v. *Withing*, 25 Maine 326 ; *Foster* v. *Swazey*, 2 W. & M. 217 ; *Woodman* v. *Saltonstall*, 7 Cushing 181 ; *Thayer* v. *Smith*, 9 Metcalf 469 ; *Bridgeway* v. *Toram*, 2 Md. Ch. 303.

4. The complainants have a complete, adequate and sufficient remedy at common law. 1 Story's Eq., secs. 74 and 495 ; 1 Story's Eq., secs. 475, 6, 7 ; *Howard* v. *Jones*, 5 Iredell's Eq. 75 ; *Blood, Adm'r*, v. *White, Adm'x*, 3 Cush. 416 ; *Law* v. *Thorndike*, 20 Pick. 317, and cases cited ; *Carroll* v. *Bowie*, 7 Gill. 34 ; *Ellicott* v. *Nichols*, 7 ditto 85 ; *Birkley & als.* v. *Presgrave*, 1 East 220 ; *Mills* v. *Hyde*, 19 Vermont 59 ; *Norton* v. *Coons*, 3 Denio 130.

5. The court of chancery will not interfere with the jurisdiction of common law courts, except when the latter are inadequate to give remedy, and then only to that degree which is requisite to give a remedy. *Adams* v. *Adams*, 22 Vt. 50 ; *Foster* v. *Swazey*, 2 W. & M. 217 ; *Wilson* v. *Leishman & als.*, 12 Met. 316 ; *Wheeler* v. *Taylor*, 6 Ired. Eq. 225 ; *Selser* v. *Ferriday*, 13 S. & M. 698 ; *Moore* v. *Tarny*, 1 Texas 42 ; *Creath* v. *Sims*, 5 How. U. S. 192 ; *Lewis* v. *Baird*, 3 McLean 56 ; *Juzan* v. *Toulmin*, 9 Ala. 662 ; *Biddle* v. *Moore*, Barr. 167.

6. An action of assumpsit for money paid, laid out and expended, is the proper action by which to collect contribution. It is not the province of a court of equity to collect mere legal demands. *Wheeler* v. *Taylor*, 6 Iredell's Eq. 225 ; *Johnson* v. *Johnson*, 11 Mass. 359–61 ; *Norton* v. *Soule*, 2 Greenl. 341, 343, 4 ; *Norton* v. *Coons*, 3 Denio 130 ; *Harris* v. *Ferguson*, 2 Bailey 397–400 ; *Cowell* v. *Edwards*, 2 B. & P. 268 ; *Mason* v. *Lord*, 20 Pick. 447–9 ; White's Leading Cases in Eq. 102, 3, 4.

Assumpsit to recover contribution will lie, also, as well where there are several sureties as where there are only two. *Foster* v. *Johnson*, 5 Vt. 60–63.

7. There is an implied promise on the part of the executors of a deceased co-surety to pay the surviving co-sureties contribution, and the action of assumpsit will lie against the represent-

atives of a deceased surety, for a payment after his death, because the implied obligation arose at the time the common suretyship was entered into.

This implied obligation, which arose at the time the common suretyship was entered into, is mutual, and attaches to both Cheever's and Plumer's estate. There is, therefore, an implied promise on the part of Cheever's estate through its representatives, (executors,) to pay Plumer's estate through its representative, (administrator,) whatever sum may be due in contribution, if any. *Batchelder* v. *Fiske & als., Ex'rs*, 17 Mass. 464; *Bradley* v. *Burwell*, 3 Denio 62–66; *Malin & a.* v. *Bull*, 13 Serg. & Rawle 441; *McKenna* v. *George*, 2 Richardson's Eq. 15–18; *Stothoff* v. *Dunham's Executors*, 4 Harrison 182.

The law raises an implied promise on the part of one co-surety to pay contribution to another co-surety, who has paid more than his share of the debt; and the form of action adopted was *indebitatus assumpsit*, for money paid, laid out and expended. *Goodall* v. *Wentworth*, 20 Maine 322–24; *Boardman* v. *Paige*, 11 N. H. 432–440; *Fletcher* v. *Grover*, 11 ditto 369, 374.

8. The discovery of assets is not material to the complainants' case. The executors are under bonds to pay all debts against their testator's estate. When such debts shall have been established — the estate being solvent — their bonds will be liable unless said debts are paid. N. H. Comp. Laws, chap. 167, sec. 12.

*Emery & Hatch*, for the complainants.

In England the court of chancery has, beyond doubt, jurisdiction over such cases. It is only in modern times that courts of law have entertained suits for contribution by sureties or joint promisers. Burge on Suretyship, 384–5; 1 Story's Com. Eq. 475.

1. Our statute confers upon this court very extensive chancery powers, sufficient to include this case. *Wells* v. *Pierce*, 7 Foster

512; *Downing* v. *Wherrin*, 19 N. H. 9, 91, 92; *Farley* v. *Blood et al.*, 10 Foster 354.

2. The bill prays discovery of assets; of the presentation of the complainants' claim or the defendants knowledge thereof; of the time the defendants have been absent from the State, and other material facts.

If the defendants knew of the claim as a claim, so as to be informed in what manner the estate should be settled, this is sufficient. *Tebbets* v. *Tilton*, 11 Foster 282.

The bill is proper to be entertained as a bill of discovery; and being entertained for that purpose, the court will go on and give relief. 1 Story's Com. Eq. 82, sec. 64; *Thompson* v. *Brown*, 4 Johns. Ch. 631; *Jesus College* v. *Bloom*, 3 Atk. 262; *Parker* v. *Dee*, 2 Ch. Cas. 200; *Ryle* v. *Haggie*, 1 Jac. & Walk., n. 236; *Rathbone* v. *Warren*, 10 Johns. 587; *Phillips* v. *Thompson*, 1 John. Ch. 131; *Miller* v. *McCann*, 7 Paige Ch. 457; *Cathcart* v. *Robinson*, 5 Peters 264.

3. The complainants have no adequate remedy at law. 1 White's Lead. Case in Eq. 82; *Craythorne* v. *Swinburne*, 14 Vesey, Jr., 164; *Fletcher* v. *Grover*, 11 N. H. 372; *Boardman* v. *Page*, 11 N. H. 431; *Whipple, Admr.,* v. *Stevens*, 19 N. H. 150.

The debt was not paid by the complainants until after the death of the defendants' testator; therefore no implied promise can arise by the executors to the complainants. 1 Story's Com. Eq. 475, sec. 479; *Primrose* v. *Brownley*, 1 Atk. 89.

Can there be any promise to pay implied against the executors of Cheever to the administrator of Plumer?

4. In this State executors and administrators are trustees of the estates which come into their possession for creditors, legatees, heirs, &c. *Parsons* v. *Parsons*, 9 N. H. 309; *Pickering* v. *Pickering*, 15 N. H. 281; *Johnson* v. *Cushing*, 15 N. H. 288; *Ladd* v. *Harvey*, 1 Foster 514; same case, 7 Foster 372; and such is the law generally. 1 Story's Eq. 543, sec. 579; 2 Story's Eq. 327, sec. 1067; *Thompson* v. *Brown*, 4 Johns. Ch. 619.

---
Walker *v.* Cheever.
---

Doctor Cheever, by his will, charges his estate, first with the payment of his debts, and thus expressly makes it a trust fund for that purpose in the hands of his executors. 2 Jarman on Wills, 512–521.

EASTMAN, J. The demurrer filed by the defendants presents two questions: first, whether the case stated by the bill is such as falls within the jurisdiction of this court as a court of equity; and second, whether the complainants have not a complete and adequate remedy at law.

The defendants are the executors of Charles A. Cheever, and the claim against them is for contribution, arising out of a note signed by Cheever and by the complainants and others, and paid by the complainants.

Under the English practice, courts of equity assume a very general jurisdiction over cases of administration, from the fact that the courts of common law and ecclesiastical courts in that country are held not to have powers adequate to give effectual relief. Many instances of the kind will be found stated in 1 Story's Com. on Eq., chap. 9. This jurisdiction is said to have been founded upon the principle that it is the duty of the court to enforce the execution of trusts. Bac. Abr., Legacy, M; 1 Madd. Ch. Prac. 466–67; 1 Story's Com. on Eq., sec. 532. But it has been also said that other grounds exist, such as the necessity of taking accounts and compelling a discovery.

With us there is no necessity for assuming any such general jurisdiction in equity upon this subject. Our statutes providing for the settlement and distribution of estates, in most cases give ample powers to the courts of probate and of common law to enforce all needful remedies to secure the rights of all parties, and so far as these statutes may apply in the settlement of estates, they take from chancery its jurisdiction. Under the statute of 1832, however, and by reënactment in the Revised Statutes, among the powers given to this court as a court of equity, is to hear and determine "in all cases of trust." Rev. Stat., chap. 171, sec. 6; and in *Parsons* v. *Parsons*, 9 N. H. 309, it was

held that an administrator is a trustee for heirs and creditors, and that we have power as a court of chancery over trusts of that description, upon a proper case, for enforcing the rights of those interested in the trust. Under that statute and the authority of that case, the complainants may sustain their bill, if it states " a proper case."

It is held in England and in New-York that a creditor may come into a court of chancery against an executor or administrator, for a discovery and distribution of assets. *Attorney General* v. *Cornthwaite*, 2 Cox 44; *Martin* v. *Martin*, 1 Vesey 210; *Rush* v. *Higgs*, 4 Ves. 638; *Thompson* v. *Brown*, 4 Johns Ch. 619. But in *McCoy* v. *Green*, 3 Johns. Ch. 58, the learned Chancellor *Kent* says, " I doubt whether a creditor ought to come into this court in an ordinary case, and without some special cause, to collect his debt from an executor or administrator. It would seem not to be enough to state that he is a simple contract creditor, for this would invite all suits against executors in this court. The ordinary and proper, as well as the cheaper and easier remedy, is at law."

In *Thompson* v. *Brown*, 4 Johns. Ch. 643, the question was fully examined, and the doctrine, as finally settled in the English chancery, is stated to be this : that upon the usual decree to account in a suit by one or more creditors against the executor, either singly for themselves, or specially in behalf of themselves and all other creditors, (for it makes no difference,) the decree is for the benefit of all the creditors, and in the nature of a judgment for all ; and all are entitled and are to have notice to come in and prove their debts before the master ; and that, from the date of such decree, an injunction will be granted upon a due disclosure of assets, upon the motion of either party to stay all proceedings of any of the creditors at law.

Bills of this sort have been allowed upon the ground that, as executors and administrators have large powers of preference at law, courts of equity ought, upon the principle that equality is equity, to interpose, upon the application of any creditor, by such a bill, to secure a distribution of assets, without preference to any

one or more creditors. And, as a decree in equity is held of equal dignity and importance with a judgment at law, a decree upon a bill of this sort, being for the benefit of all the creditors, makes them all creditors by decree upon an equality with creditors by judgment, so as to exclude, from the time of such decree, all such preferences. 1 Story's Com. on Eq., sec. 547; *Perry* v. *Philips*, 10 Vesey 38.

This priority, however, which creditors holding judgments and specialties against the estate of the deceased, have over those holding simple contracts, does not exist in this State. Under our statute, a judgment or bond creditor has no preference over one who holds a simple promissory note. And hence, with us, this main reason for a creditor's bill does not exist; and, not existing, the remarks of the court in *McCoy* v. *Green*, already quoted, may well apply. Resort to equity should only be allowed in special cases. The ordinary and proper, as well as the cheaper and easier remedy, is at law.

Again: chancery has jurisdiction in matters of account; but to sustain a bill for an "account," there must be mutual demands; not a single matter, but a series of transactions on one side, and of payments on the other. *Porter* v. *Spencer*, 2 Johns. Ch. 169; *Dinwiddie* v. *Bailey*, 6 Vesey 136; 1 Madd. Ch. Prac. 70; 1 Story's Eq., sec. 458.

If a discovery is wanted in aid of the account, and is obtained, a bill may be sustained when the accounts to be examined are on one side only. But where the accounts are only upon one side, if no discovery is asked or required by the frame of the bill, the jurisdiction will not be maintained. 1 Story's Eq., sec. 458.

After a general discussion of the jurisdiction of chancery in matters of account, *Story* states the rule as follows: On the whole, it may be laid down as a general doctrine, that in matters of account, growing out of privity of contract, courts of equity have a general jurisdiction where there are mutual accounts, and also where the accounts are on one side, but a discovery is sought and is material to the relief. And, on the other hand, where the accounts are all on one side, and no discovery is sought or

required ; and also where there is a single matter on the side of the plaintiff seeking relief, and mere set-offs on the other side, and no discovery is sought or required ; in all such cases courts of equity will decline taking jurisdiction of the cause. The reason is, that no peculiar remedial process or functions of a court of equity are required ; and if under such circumstances the court were to entertain the suit, it will merely administer the same functions in the same way as a court of law would in the suit. In short, it would act as a court of law. 1 Story's Eq., sec. 459.

The bill before us prays for an account of the note, and of the money paid by the complainants in taking it up, and of the just share to be paid by the defendants, and for payment of the same. Now it would seem manifest that it cannot be sustained as a bill for an account. There are no mutual demands between the parties, nor is any discovery sought or required in aid of the complainant's account ; if indeed it be not a misnomer to call it an account. The complainant's demand is simply for money paid by them on a joint and several note. There are no items of account or matters of set-off involved in the controversy, and the case does not come within any of the rules allowing a bill for an account.

And it would seem to be equally clear that the bill cannot be sustained upon the ground of a trust in the defendants as the executors of Charles A. Cheever, because no special case is shown against them as such, calling for the interposition of a court of equity. The bill does not ask for any discovery and distribution of assets, so as to bring it within the English rule of a creditor's bill. It does not charge upon the defendants any fraud or concealment of property. It does not allege any trust in them, other than what arises by implication of law from the fact of their being executors. There is nothing charged which particularly distinguishes the case from the ordinary one of a claim against an estate for contribution ; and for us to take jurisdiction of such a case in equity, on the ground merely that the defendants are executors, would be in effect to authorize the collection of all debts against an estate by a bill in equity

instead of a suit at law. And we are satisfied that the statute upon which counsel rely, and which gives this court as a court of equity power to determine in cases of trust, does not contemplate the adoption of any such rule.

We think, however, that, upon the principle of general equity jurisdiction existing in this court, the bill may be sustained, if there is no valid objection on the ground of there being a complete and adequate remedy at law; for whatever doubts may have been entertained heretofore, we regard it as now settled, that this court, as a court of equity, has full chancery powers and a general equity jurisdiction; *Wells* v. *Pierce*, 7 Foster 503, 512; and that it will administer relief in all cases falling within equity jurisdiction, where the statutes of the State have not provided other means of redress.

But it is contended that the complainants have a complete and adequate remedy at law, and that the demurrer is well taken upon that ground. This position we will examine.

*Story* says that the jurisdiction now assumed in courts of law upon the subject of co-sureties, in no manner affects that originally and intrinsically belonging to equity, and that there are many cases in which the relief is more complete and effectual in equity than at law; as, if there are several sureties, and one is insolvent and another pays the debt, he can at law recover from the other solvent sureties only the same share as he could if all were solvent. And he puts this case : If there are four sureties, and one is insolvent, a solvent surety, who pays the whole debt, can recover only one fourth part thereof, and not a third part, against the other two solvent sureties; but that in a court of equity he will be entitled to recover one third part of the debt against each of them, for in equity the insolvent's share is apportioned among all the solvent sureties. 1 Story's Eq., sec. 496.

But in *Boardman* v. *Paige*, 11 N. H. 431, it was decided that where there are several co-signers of a note, and one pays the whole, but before the payment some of the co-signers remove from the State, such removal is to be considered as having the same effect as if they were proved insolvent; and accordingly

the party paying is not bound to seek his remedy against those co-signers in the foreign jurisdiction, but may recover by way of contribution of each of those remaining within the State an equal share of the whole sum paid.   In that case Boardman and Paige, the parties to the suit, and two others, were co-promissors on a note for $300.   Judgment was obtained against Boardman by the holder of the note, for the full amount and interest, but before he paid the execution the two other signers removed from the State.   Boardman then brought his action of assumpsit against Paige, and the court held that he was entitled to judgment for one half of the amount of the note.   In the course of the opinion, *Woods*, Justice, in discussing the question of contribution, says that the rule of law rests upon an equitable foundation, and that wherever equity goes there the rule of law goes. He remarks, further, that the plaintiff and defendant, having presumptively derived equal benefits from the contract, were equally bound to bear its burdens, but if the plaintiff were required to seek his remedy in a foreign jurisdiction, or alone to sustain the loss without right of contribution against the defendant beyond the fourth part of the sum paid, it would be apparent that the burden would not fall equally on each.

We are not aware of any decision in this State which conflicts with *Boardman* v. *Paige*, and upon the doctrine there laid down these complainants could maintain an action at law against the defendants and obtain equitable relief.   The action is not founded upon positive contract, but upon fixed principles of justice, and it may be enforced at law, although no such contract exists. *Deering* v. *The Earl of Winchelsea*, 2 Bos. & Pull. 270; 1 Story's Com. on Eq., sec. 349.

But such cases are within original equity jurisdiction, and equitable principles have been followed in giving redress in the courts of law.   This the authorities already show.   And equity will not be ousted of its jurisdiction, because courts of law adopt equitable principles.     *Wells* v. *Pierce*, 7 Foster 503; *Sailly* v. *Elmore*, 2 Paige 497; *Mintura* v. *Farmer's Loan*, 3 Comstock 501; *King* v. *Baldwin*, 17 Johns. 384.

Moreover, a multiplicity of suits is prevented by maintaining chancery proceedings in such cases, and this constitutes an additional reason for a court of equity to take jurisdiction. 1 Fonb. Eq., B, 1, ch. 1, sec. 3; 1 Story's Eq., secs. 64–67; *Middleton Bank* v. *Russ*, 3 Conn. 135; *Jesus College* v. *Bloom*, 3 Atk. 262, 263.

We think, therefore, that notwithstanding the complainants have a remedy at law, still, upon the principles and authorities stated, the bill may be entertained, and

*The demurrer must consequently be overruled.*