Carroll
No. 87-441

## Michael Glick

v.

## Town of Ossipee

July 11, 1988

*Law Offices of James J. Kalled,* of Ossipee (*Harvey J. Garod* on the brief and orally), for the plaintiff.

*Patten and Helme,* of Ossipee (*James R. Patten* and *Wenda T. Helme* on the brief, and *Mr. Patten* orally), for the defendant.

*H. Bernard Waugh,* of Concord, by brief for New Hampshire Municipal Association, as *amicus curiae.*

JOHNSON, J. The defendant, the Town of Ossipee (Ossipee), brings an interlocutory appeal pursuant to Supreme Court Rule 8 challenging the conclusion of the Trial Court (*O'Neil,* J.) that Ossipee Mountain Road, which furnishes access to property owned by the plaintiff, Michael Glick (Glick), is a class V highway that Ossipee has a duty to maintain. We reverse and remand.

The issue presented is whether a class V highway becomes a class VI highway pursuant to RSA 229:5, VII solely because a town does not maintain it for travel for five successive years or more.

On or about November 12, 1974, Glick bought a 43.6-acre tract of land known as the Marble Place, which is located in Ossipee and Moultonborough. In Ossipee, Glick gains access to his property by means of Ossipee Mountain Road. Ossipee has not maintained this road regularly for at least 30 years, yet loggers, hunters and fishermen traveled it long before Glick's purchase and have continued to travel it since his purchase. Ossipee has, however, repaired the roadbed within the past five years, in response to an emergency created by flooding. Although Ossipee Mountain Road is classified in the records of the New Hampshire Department of Transportation as a class VI highway, there is no evidence that Ossipee ever formally designated this road a class VI highway.

Glick, having failed at several town meetings to secure the designation of Ossipee Mountain Road as a class V highway, brought an action for declaratory judgment in the superior court, seeking to compel Ossipee to maintain the road as a class V highway. The trial court concluded that because the road has been: (1) traveled continuously for 30 years; (2) repaired by Ossipee during the past 5 years; and (3) free of gates and bars, it is a class V highway. The court therefore granted Glick's motion for partial summary judgment and denied Ossipee's motion for summary judgment.

Ossipee thereupon filed a motion for reconsideration and a motion for Rule 8 transfer to this court. Glick responded by filing a motion to compel Ossipee to maintain Ossipee Mountain Road pending the outcome of Ossipee's interlocutory appeal. The trial court denied Ossipee's motion for reconsideration, but granted its motion for Rule 8 transfer. The court also granted Glick's motion to compel Ossipee to maintain the highway pending appeal, but this court stayed the order.

Ossipee argues that five successive years or more of non-maintenance are sufficient to downgrade a highway from class V to class VI. Ossipee also argues that the mere fact that Ossipee Mountain Road has long been and is presently "traveled," within the meaning of RSA 229:5, VI, is not sufficient to make it a class V road. Glick contends that RSA 229:5, VI requires a road to be both unmaintained and untraveled in order for it to be downgraded from class V to class VI. We agree with Ossipee.

RSA 229:5, VI states: "Class V highways shall consist of all other traveled highways which the town has the duty to maintain regularly and shall be known as town roads." RSA 229:5, VII states: "Class VI highways shall consist of all other existing public ways, and shall include all highways discontinued as open highways and made subject to gates and bars, and all highways which have not been maintained and repaired by the town in suitable condition for travel thereon for five successive years or more." The trial court, in ruling that the .9 mile section of Ossipee Mountain Road that provides access to Glick's property is a class V highway, mis-construed the words "which the town has the duty to maintain regularly" that conclude RSA 229:5, VI. The court apparently treated these words as mere surplusage in disregard of our observation that the legislature is not inclined to "waste its words." *Blue Mountain Forest Ass'n v. Town of Croydon*, 117 N.H. 365, 372, 373 A.2d 1313, 1317 (1977) (citing 2A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 46.06 (4th ed. 1973)).

In seeking to determine the intent of the legislature regarding a statute, we will consider the language and structure of the statute. *Appeal of Public Serv. Co. of N.H.*, 125 N.H. 46, 52, 480 A.2d 20, 24 (1984) (citation omitted). A widely accepted rule of statutory construction is ". . . to read, and examine the text of a statute and draw inferences concerning its meaning from its composition and structure." *State v. Flynn*, 123 N.H. 457, 462, 464 A.2d 268, 271 (1983). "This court ascribes to statutory words and phrases their usual and common meaning, unless the statute itself

suggests otherwise." *Id.* (quoting *Silva v. Botsch,* 120 N.H. 600, 601, 420 A.2d 301, 302 (1980)).

The legislature has not defined class V highways as merely "traveled" highways, but rather, as "traveled highways which the town has the duty to maintain regularly." RSA 229:5, VI. Highways are class V, then, because they are both "traveled" and "maintained regularly." Had the drafters intended the statute to be construed as the trial court has construed it, they would have placed a comma between "highways" and "which", indicating that all "traveled" highways are class V and, therefore, that towns must regularly maintain them. Instead, the drafters left the comma out, indicating that class V is limited to those "traveled" highways that towns are obligated to maintain regularly.

██ The legislature's construction recognizes that many highways that have attained class VI status by virtue of having been formally discontinued subject to gates and bars are nevertheless "traveled," if only occasionally by hunters and fishermen. This construction also recognizes that class VI highways are full public highways that the public has the right to pass over, *King v. Lyme,* 126 N.H. 279, 283, 490 A.2d 1369, 1372 (1985) (citing *Brown v. Brown,* 50 N.H. 538, 550–51 (1871)); *Proctor v. Andover,* 42 N.H. 348, 351 (1861), even though such highways are not "approved public street[s]" for zoning purposes, RSA 231:45. Only a formal discontinuance can legally terminate the public's right to travel on any public way. *Marrone v. Town of Hampton,* 123 N.H. 729, 734, 466 A.2d 907, 910 (1983) (citing *Hartford v. Gilmanton,* 101 N.H. 424, 426, 146 A.2d 851, 853 (1958)) (citation omitted). Most importantly, the legislature's construction recognizes that if roads could be designated class V highways solely because they are "traveled," even those roads that have been discontinued subject to gates and bars would be class V highways deserving of regular town maintenance because people continue to travel them. The legislature clearly seeks to avoid this incongruous result by restricting the class V designation to highways that are both "traveled" and "maintained."

It is immaterial that Ossipee Mountain Road is not subject to gates and bars, because RSA 229:5, VII expressly includes under the class VI designation not only highways that are subject to gates and bars, but also "all highways which have not been maintained and repaired by the town in suitable condition for travel thereon for five successive years or more." Ossipee Mountain Road, by virtue of not having been maintained by Ossipee for more than 30 years, is a class VI highway.

It is also immaterial that Ossipee has repaired this road within the past five years, because the parties agreed that those emergency repairs, which occurred as a result of a severe flood and *after* this litigation began, would not be used to support a finding at trial that Ossipee has been maintaining this road regularly, as it would a class V highway. Indeed, the trial court, having relied at trial upon these repairs as evidence of class V status, later retracted such reliance when ruling on Ossipee's motion for reconsideration.

■ We determine that because Ossipee has not maintained it since 1948, Ossipee Mountain Road is a class VI highway.

■ ■ Ossipee also argues that there is no statutory requirement that a highway be reclassified by means of a formal procedure that includes a town meeting. We agree. The trial court, in ruling that reclassification can be effected only by means of such a procedure, mistakenly relied upon *Marrone v. Town of Hampton*, 123 N.H. at 735, 466 A.2d at 911. In *Marrone*, we did not state that a town meeting is necessary in order to reclassify a highway. Rather, we merely noted that selectmen do not possess authority to discontinue a highway absent a town meeting vote. *Id.* Neither party in this case is arguing that Ossipee Mountain Road has been discontinued, hence *Marrone* is inapposite. A town meeting vote is necessary for the discontinuance of a highway; that is, the legal termination of the public's right to travel on the highway. Reclassification, however, does not terminate the public's right to travel on a highway, and a town meeting vote is therefore not necessary to effect a reclassification. Indeed, the legislature has never established a formal procedure for reclassifying highways, leaving towns free to respond as they see fit to changing population patterns and attendant changes in road maintenance needs.

■ In rejecting Glick's contention that Ossipee Mountain Road is a class V highway, we also reject his assertion that Ossipee is estopped to rely upon its alleged past illegal conduct, namely, non-maintenance, in arguing that a resumption of maintenance would impose an undue burden upon its taxpayers. Since Ossipee's actions were well within the bounds of RSA 229:5, VII, Ossipee did not engage in any illegal conduct which it can now be estopped to rely upon.

Ossipee argues, further, that permitting it to reclassify Ossipee Mountain Road by means of non-maintenance will not encourage municipalities to neglect road maintenance for five consecutive years in hopes of being able to permanently relieve themselves of road maintenance obligations. We agree. To conclude otherwise is

to ignore RSA 231:90, which provides that three citizens or taxpayers may notify a town of a road's inadequacies at any time prior to five years from the commencement of non-maintenance. Upon receipt of notice, the town is obliged to begin repairing the road within 24 hours and to continue the work with reasonable dispatch. RSA 231:91. Additionally, a town that fails to "keep a highway in good repair suitable for travel thereon" is subject to a fine, RSA 231:82, in an amount sufficient to cover the cost of repairing the highway, RSA 231:84. Requiring reclassification of roads only by town meeting vote is not necessary to insure that towns maintain their roads.

We also agree with Ossipee that permitting it to reclassify Ossipee Mountain Road through non-maintenance facilitates the legislature's policy of allowing towns to control road maintenance expenses by restricting development on inadequate roads. Restricting development on roads that have fallen into disrepair as a result of disuse and a subsequent lack of attention by the towns is essential to the towns' efforts to insure that the roads that provide access to residential developments are adequate for that purpose. This is precisely what Ossipee is seeking to do in choosing not to maintain Ossipee Mountain Road. The town's decision in 1948 to discontinue maintenance of the road occurred when the house that Glick now occupies became unoccupied and remained unoccupied for many years, causing the road to fall into disuse. Ossipee understandably elected not to use any of its road maintenance resources to maintain a road that was not being used on a regular basis.

The legislature's policy of permitting towns to restrict development on inadequate roads is reflected in RSA 229:5, VII and RSA 674:41. RSA 229:5, VII permits towns to relinquish responsibility for maintaining roads that are rarely traveled and that do not furnish access to sites of commercial or residential development. RSA 674:41, I(c) prohibits building on any lot or issuing a building permit for any lot to which the road that provides access is a class VI highway, *unless*:

> (1) "[t]he local governing body after review and comment by the planning board has voted to authorize the issuance of building permits . . . on said . . . highway . . . ; *and*
> (2) [t]he municipality neither assumes responsibility for maintenance of [the] highway nor liability for any damages resulting from the use thereof; *and*

(3) . . . the applicant shall produce evidence that notice of the limits of municipal responsibility and liability has been recorded in the county registry of deeds." (Emphasis added.)

The purpose of this limitation on building on class VI highways is to "[p]rovide against such scattered or premature subdivision . . . as would . . . necessitate the excessive expenditure of public funds . . . ." RSA 674:36, II(a) (formerly RSA 36:21 (Supp. 1975)); *see Garipay v. Hanover*, 116 N.H. 34, 35, 351 A.2d 64, 65 (1976); *Patenaude v. Town of Meredith*, 118 N.H. 616, 620, 392 A.2d 582, 585 (1978).

If we upheld the decision of the trial court, it is likely that Ossipee Mountain Road and other long-abandoned roads would be opened for development and towns would be forced to repair and then maintain them, at considerable expense. Indeed, the estimated cost of upgrading the .9 mile section of Ossipee Mountain Road at issue here is between $80,000 and $100,000. In these circumstances, "a private developer could single-handedly require an increase in the municipal tax burden." *Land/Vest Props., Inc. v. Town of Plainfield*, 117 N.H. 817, 825, 379 A.2d 200, 205 (1977). We reverse the decision of the trial court in order "to preserve the legislature's intent that the municipality, in the exercise of reasonable discretion, retain ultimate responsibility for its financial integrity." *Id.*

We conclude that the trial court erred in granting Glick's motion for partial summary judgment and in denying Ossipee's motion for summary judgment, and we remand to the trial court for an order consistent with this opinion.

*Reversed and remanded.*

All concurred.