Belknap
No. 91-127

SALVATORE C. TURCO AND HELEN T. TURCO

v.

TOWN OF BARNSTEAD

October 30, 1992

258

*Barto & Puffer, P.A.*, of Concord (*Mark H. Puffer* on the brief and orally), for the plaintiffs.

*McManus & Stiles, P.A.*, of Dover (*Anthony A. McManus* on the brief and orally), for the defendant.

BATCHELDER, J. The plaintiffs, Salvatore and Helen Turco, appeal from a decision of the Superior Court (*Dickson,* J.), ruling that the defendant, the Town of Barnstead, was not obligated by the doctrine of municipal estoppel to maintain Garland Road, on which the plaintiffs had built a house. We find that the defendant is estopped from failing to maintain the road, and remand for imposition of an appropriate equitable remedy.

In 1959, the plaintiffs acquired a plot of land consisting of about 60 acres in the Town of Barnstead. They vacationed in the seasonal cottage on the land for nearly thirty years, and in 1987 decided to build a year-round retirement home.

The Turcos' land fronts on Garland Road, which serves as the only access to the house. The road's classification was dispositive of the case below because towns are forbidden to grant a building permit unless the fronting road is "a class V or better highway," RSA 674:41, I(a). New Hampshire state highways are classified into six categories, with class I and II generally being the highest quality, and class VI being the lowest.

> "Class V highways shall consist of all other traveled highways which the town has the duty to maintain regularly and shall be known as town roads."

RSA 229:5, VI.

> "Class VI highways shall consist of all other existing public ways, and shall include . . . all highways which have not been maintained and repaired by the town in suitable condition for travel thereon for 5 successive years or more."

RSA 229:5, VII.

While the plaintiffs have since conceded that Garland Road is a class VI highway, at the time of the events in this case, its status was not clear. The road had not been maintained by the town since 1976, but New Hampshire Department of Transportation records listed it as class V, even up to the time of trial, and as of the time of trial the town had not notified the State of any change in classification. Because of the State's listing, the town received money from the State ostensibly to aid in the highway's maintenance. Moreover, the "Official Town Road Map," signed by the Barnstead Board of Selectmen as late as February 1990, indicated that Garland Road was a class V highway.

In August 1987, the plaintiffs approached one of the town's three selectmen, Leonard Tasker, with questions concerning acquisition of a building permit, and expressed their worries that the town might not maintain Garland Road. Selectman Tasker testified at trial that he assumed Turco intended merely to replace his cottage, which had been severely damaged several years earlier by vandals, with a new seasonal one. He then assured the plaintiffs that the town would maintain the road, although "not like a super highway." In the fall of 1987, the plaintiffs applied for a building permit for a 24-by-40 foot

wood-framed house, estimated to cost about $67,000, and in October 1987 the town issued a building permit.

From the fall of 1987 to the following summer, the Turcos made substantial improvements to their land in preparation for the new house: they cleared the land, obtained septic plan approval by the State and the town, installed the septic system, poured a foundation, and had several officials inspect various aspects of the construction progress.

In March 1988, the plaintiffs spoke again with Selectman Tasker concerning the maintenance of Garland Road, and were again assured that it would be maintained by the town. That summer, they ordered a modular house, which was delivered on September 15, 1988. On the day of delivery, the plaintiffs were informed by their surveyor that he had heard from the town road agent that the road would not be maintained.

Shortly thereafter, the Turcos approached a second of the town's three selectmen, Paul Golden, concerning the maintenance of the road. Selectman Golden did not mention that the town considered the road class VI. Later, the plaintiffs met with all three selectmen. At the meeting, Selectman Tasker did not deny that he told Turco that the town would maintain the road, but said, according to Mr. Turco, "After all, I'm only one" selectman. The selectmen suggested that the Turcos submit a warrant article for the March 1989 town meeting. The Turcos did so, but withdrew it before it came up for a vote upon the advice of the selectmen because the selectmen believed that after this court's decision in *Glick v. Town of Ossipee*, 130 N.H. 643, 547 A.2d 231 (1988), the selectmen could take care of the problem without a vote of the town meeting.

In May 1989, the selectmen asked the Turcos to attend a selectmen's meeting. They did so, and were informed that the town might agree to maintain the relevant 0.3 miles of Garland Road if the plaintiffs would bear the cost of bringing it up to class V condition. The Turcos were also given an engineering worksheet indicating that doing so would cost about $87,000.

Meanwhile, in January 1989, the plaintiffs asked the Barnstead Planning Board to subdivide the portion of the land with the new house on it from the rest of the plot. The town did not act on the request, and the Turcos filed a formal petition in September 1989. In November the board denied the subdivision because the "[s]ubdivision [is] located on a Class VI road."

The Turcos brought suit in superior court seeking a mandatory injunction compelling Barnstead to maintain the road, and a declara-

tory judgment stating that (1) the relevant portion of Garland Road was a class V highway; (2) the town was estopped from failing to maintain the relevant portion of Garland Road because the plaintiffs had relied upon conversations with the various selectmen, and had been issued a building permit; (3) the proposed subdivision should be acted upon and approved regardless of the classification of Garland Road; (4) the town's actions caused the plaintiffs delay and expense, and resulted in the loss of enjoyment of their property; and (5) the plaintiffs should be awarded attorney fees. We note that the town has not sought the taking or destruction of the Turcos' land or house, but is merely defending against the plaintiffs' equitable actions. The court found for the town on all claims.

On appeal, the plaintiffs have conceded that the relevant portion of Garland Road is a class VI highway, and have not raised the matters of damages and attorney fees. Thus, the questions for this court are first whether the superior court erred in not applying municipal estoppel, and second whether the plaintiffs are entitled to subdivide their land.

■ This court set out the general elements of estoppel in *Stevens v. Dennett*, 51 N.H. 324, 333–34 (1872), which we have restated in the municipal context. The plaintiffs must show that the defendant made a false representation or a concealment of material facts; the representation must have been made with knowledge of the facts; the plaintiffs must have been ignorant of the truth of the matter; the representation must have been made with the intention that the plaintiffs should act upon it; and the plaintiffs must have been induced to act upon it to their prejudice. *Town of Nottingham v. Lee Homes, Inc.*, 118 N.H. 438, 442, 388 A.2d 940, 942 (1978). In addition, the reliance must be reasonable, and must be based on authorized representations. *City of Concord v. Tompkins*, 124 N.H. 463, 468, 471 A.2d 1152, 1154–55 (1984).

■ The party asserting estoppel bears the burden of proving the elements, *Town of Nottingham*, 118 N.H. at 442, 388 A.2d at 942, and the finding of the court below will stand "unless it is unsupported by the evidence or erroneous as a matter of law," *Jackson v. Ray*, 126 N.H. 759, 761, 497 A.2d 1191, 1193 (1985) (quotation omitted). While municipal corporations have long been subject to estoppel, *Gilbert v. Manchester*, 55 N.H. 298, 303 (1875), the law does not favor its application against municipalities, *Missionaries of La Salette Corp. v. Town of Enfield*, 116 N.H. 274, 275, 356 A.2d 667, 668 (1976).

■■ Plaintiffs' first basis for arguing estoppel is the conversations with the selectmen. Under New Hampshire law, there can be no estoppel by an unauthorized statement of an official, *Rye Beach Village Dist. v. Beaudoin*, 114 N.H. 1, 6, 315 A.2d 181, 184 (1974); *Smith v. Town of Epping*, 69 N.H. 558, 560, 45 A. 415, 416 (1899). Authority cannot be created by estoppel, *State v. Hutchins*, 79 N.H. 132, 140, 105 A. 519, 523 (1919), and one cannot rely on asserted authority, *Storrs v. Manchester*, 88 N.H. 139, 142, 184 A. 862, 864 (1936), or apparent authority, *Trustees of Phillips Exeter Academy v. Exeter*, 90 N.H. 472, 494, 27 A.2d 569, 586 (1940). This court has traditionally held that when a citizen deals with the government, one is charged with knowledge of the extent of the official's authority, *Richards v. Columbia*, 55 N.H. 96, 99 (1874); *Tompkins*, 124 N.H. at 470, 471 A.2d at 1156, and if one relies on an unauthorized representation, the law considers that no injury occurred, *Smith v. Town of Epping*, 69 N.H. at 560, 45 A. at 416.

■■ Courts have mitigated potentially harsh results by warning triers of fact to "be wary of imputing notice of the legal limitations upon government officials to persons who are inexperienced in the affairs of government," *Tompkins*, 124 N.H. at 473, 471 A.2d at 1158. "[R]eliance is reasonable 'when a person sincerely desirous of obeying the law would have accepted the information [relied upon] as true, and would not have been put on notice to make further inquiries.'" *Id.* (quoting *United States v. Lansing*, 424 F.2d 225, 227 (9th Cir. 1970)). This mitigation, however, does not apply to representations made in the course of informal conversations with government officials, such as here, where they are speaking or acting outside of their official capacity, *see Byrne Organization, Inc. v. United States*, 287 F.2d 582 (Ct. Cl. 1961), for such informality would put a reasonable person on notice to make further inquiries.

■■ However, the plaintiffs' next argument, that the town should be estopped as a result of the issuance of the building permit, is more persuasive. Applying the elements of municipal estoppel, we conclude, first, that by granting the permit, the town represented to the plaintiffs that they were entitled to construct the home, and entitled to all rights reasonably appurtenant to it, including reasonable access. Second, the representation contained in the permit was made with knowledge of the facts, as there is nothing in the plaintiffs' permit application indicating that their plans were not for a year-round house, and the town must be presumed to know the law governing building permits, *see Aranosian Oil Co. v. City of Portsmouth*, 136

N.H. 57, 60, 612 A.2d 357, 359 (1992). Third, the plaintiffs were ignorant of the actual status of the road; at best, it was unclear. Fourth, it would not make sense to suggest that the permit was granted without the intention by the town that the plaintiffs rely on it: Why else would the plaintiffs have applied for the permit? Fifth, the plaintiffs were prejudiced by their reliance on the permit. Mr. Turco testified: "I spent $65,000 . . . to build a year-round home. It certainly doesn't make any economical sense that I should have to invest $87,000 to maintain a road. I would never, never, never consider doing such a thing."

Finally, we consider whether the Turcos' reliance was reasonable. "[W]here the owner, relying in good faith upon a [building] permit and before it has been revoked, has made substantial construction on the property or has incurred substantial liabilities relating directly thereto, or both, the permit may not be canceled." *Winn v. Corporation*, 100 N.H. 280, 281, 124 A.2d 211, 213 (1956). However, in *Winn*, an amendment to the zoning ordinance rendered the permit illegal, whereas in the situation at hand the permit was issued in contravention of existing law.

> "While it is true that vested rights may be acquired by the expenditure of substantial sums in reliance upon a permit properly issued before amendment of an ordinance, this rule does not extend to cases where the issuing official exceeded his authority by issuing a permit in violation of an ordinance then in effect."

*Dumais v. Somersworth*, 101 N.H. 111, 115, 134 A.2d 700, 702 (1957). Because matters such as public fixtures and zoning ordinances are legislative prerogatives, a person acquires minimal private rights in them. *See, e.g., Adams v. Bradshaw*, 135 N.H. 7, 14, 599 A.2d 481, 486 (1991) ("a property owner has no vested right in a sewer connection" and at most acquires a license), *cert. denied*, — U.S. —, 112 S.Ct. 1560 (1992); *Vachon & Son, Inc. v. Concord*, 112 N.H. 107, 109–10, 289 A.2d 646, 648 (1972) (no vested rights in a zoning classification); *Glick v. Town of Ossipee*, 130 N.H. at 646, 547 A.2d at 233 (town road may be discontinued by a vote of the town). Consequently, estoppel would not normally be available to the plaintiffs here, *see Arsenault v. Town of Keene*, 104 N.H. 356, 187 A.2d 60 (1962) (no rights created by use which was illegally established); *Parkview Associates v. City of New York*, 71 N.Y.2d 274, 279, 519 N.E.2d 1372, 1373, 525 N.Y.S.2d 176, 176 ("estoppel is not available to preclude a governmental entity from discharging its statutory duties or to compel ratification of

prior erroneous implementation in the issuance of an invalid building permit"), *cert. denied and appeal dismissed*, 488 U.S. 801 (1988), especially where the lack of estoppel would not result in the loss of the plaintiffs' property.

 Nevertheless, unlike *Dumais v. Somersworth*, where the facts of the situation were clear and easily discoverable, here a reasonably diligent inquiry would not have disclosed that Garland Road was a class VI highway. *See Parkview Associates*, 71 N.Y.2d at 279, 519 N.E.2d at 1372, 525 N.Y.S.2d at 176 (estoppel may be available "where reasonable diligence by a good-faith inquirer would [not] have disclosed the true facts and the bureaucratic error"); *Richards v. Columbia*, 55 N.H. 96, 100 (1874) ("plaintiff was bound to take notice of the defect in the agent's appointment"). Both the department of transportation map and the Official Town Road Map listed the road as class V, allowing the town to collect money from the State for its maintenance. It was only the actual condition of the road that may have indicated to the plaintiffs that Garland Road was not class V. *Cf. Godson v. Surfside*, 150 Fla. 614, 8 So.2d 497 (1942) (changing shoreline rendered zoning map inaccurate); *W. H. Barber Co. v. Minneapolis*, 227 Minn. 77, 34 N.W.2d 710 (1948) (dispute over which version of the zoning map was official). These facts, combined with the selectmen's statements and officials' inspection of various improvements (although not the source of estoppel), made the plaintiffs' reliance on the permit reasonable.

 This court and the superior court have equitable powers, *Walker v. Cheever*, 35 N.H. 339 (1857); RSA 498:1, and may fashion equitable remedies, *Dinsmore v. Manchester*, 76 N.H. 187, 191, 81 A. 533, 535 (1911). Generally, "[e]stoppel operates to put the party entitled to its benefit in the same position as if the thing represented were true." *Town of Nottingham v. Lee Homes, Inc.*, 118 N.H. at 442, 388 A.2d at 942 (quotations omitted). However, this does not imply that Garland Road should be declared class V. Rather, it suggests that the plaintiffs should be granted reasonable access to their property for the time being, without necessarily imposing upon the town a duty to improve or maintain the road to a standard accepted for any particular road class. We leave it to the trial court to specify, after hearing, an acceptable condition of the road, and a duration certain for which that condition should exist. In doing so, the court may take into account the fact that the town did not inform the State of the classification of Garland Road, and thereby collected money from the State for its maintenance on the pretense that it was still

class V, *see Marrone v. Town of Hampton*, 123 N.H. 729, 736, 466 A.2d 907, 910–11 (1983), the condition of the road at the time the facts in this case arose, and any other equitably related facts. Moreover, our decision today does not constrain the town in the future from doing what it considers prudent, in accord with applicable law. *See Marrone*, 123 N.H. at 735, 466 A.2d at 910; *Amazeen v. Town of New Castle*, 76 N.H. 250, 253, 81 A. 1079, 1081 (1911).

Finally, we address the question of whether the Turcos' subdivision request was improperly denied. RSA 674:41 provides that "no building shall be erected on any lot . . . nor shall a building permit be issued for the erection of a building unless the street giving access . . . [is] a class V or better highway." "The purpose of this limitation on building on class VI highways is to provide against such scattered or premature subdivision as would necessitate the excessive expenditure of public funds." *Glick v. Town of Ossipee*, 130 N.H. at 649, 547 A.2d at 235 (quotation and omissions omitted). This court has held that the statute applies with equal force to building permits and subdivision permits. *Vachon v. Town of New Durham Z.B.A.*, 131 N.H. 623, 629, 557 A.2d 649, 653 (1989).

The court below found that the reason the town denied the plaintiffs' subdivision request was because Garland Road was a class VI highway. This court has not vacated that finding, nor do we conclude that estoppel applies in this context. Thus we hold that the subdivision permit was not improperly denied.

*Affirmed in part; reversed in part; remanded.*

HORTON, J., with whom THAYER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: I agree with the trial court that the petition should be dismissed. The majority rejects the subdivision claim but finds estoppel to require some measure of maintenance on Garland Road. I would not apply municipal estoppel to this set of facts.

In analyzing the representation element of municipal estoppel, the majority focuses on the town's grant of a building permit. It suggests that in granting the permit, the town represented that the plaintiffs "were entitled to construct the home, and entitled to all rights reasonably appurtenant to it, including reasonable access." To say that the granting of a building permit guarantees all appurtenances is an extension of the law I decline to adopt. The majority cites *Adams v. Bradshaw*, 135 N.H. 7, 599 A.2d 481 (1991) (sewer rights), *cert. de-*

*nied,* — U.S. —, 112 S.Ct. 1560 (1992); *Vachon & Son, Inc. v. Concord,* 112 N.H. 107, 289 A.2d 646 (1972) (zoning classification); and *Glick v. Town of Ossipee,* 130 N.H. 643, 547 A.2d 231 (1988) (roads), for examples of rights appurtenant that are not guaranteed. The permit obviously carried a representation that the plaintiffs had a right to build. It does not follow, however, that the permit also represented that the plaintiffs were entitled to all reasonable appurtenances to their home, or that these appurtenances would continue to exist. Nor would I adopt the theory that a grant of a building permit warrants that all legal conditions for the permit have been met. The fact that frontage on a class V highway was required for the grant of a building permit should not be converted into a representation to the applicant that such frontage exists.

As for the reasonableness of the plaintiffs' reliance on the town's representation, this inquiry involves a factual determination that should remain in the province of the trial court. There was sufficient evidence to support the trial court's decision that the plaintiffs' reliance was not reasonable. First, the poor physical condition of the road was a good indication that it was not maintained as a class V highway. Second, the trial court could have found that the plaintiffs could not reasonably have relied on the opinion of the selectman or a reading of the building permit, and that they should have inquired further on the status of the road. Although the majority articulates a strong argument for reasonable reliance, under these circumstances it is not our call.

Finally, I am impressed with the town's argument that there is no mandatory finding of prejudice. Although the plaintiffs invested a substantial sum of money in the improvements, there is no evidence that, upon obtaining a building permit, legal or otherwise, they would not have built on a class VI highway. Some homeowners prefer this access, and much greater sums have been expended under similar conditions. Indeed, RSA 674:41, I(c) specifically provides for such an enterprise. The trial court might well have concluded that the plaintiffs understood the nature of the access to their home, and were simply seeking to improve that access at the town's expense.

Since I am unwilling to adopt the majority's view of the scope of the representation tied to the issuance of a building permit, and believe in this case that the issues of reasonable reliance and prejudice are in the proper province of the trial court, I would affirm.

THAYER, J., joins in the dissent.