# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0437, <u>Manuel Barba v. Town of Rye</u>, the court on June 24, 2019, issued the following order:**

Having considered the opening and reply briefs filed by the plaintiff, Manual Barba, the brief filed by the defendant, the Town of Rye (Town), and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The plaintiff appeals an order of the Superior Court (<u>Schulman</u>, J.) ruling in favor of the defendant on the plaintiff's request for a declaratory judgment on his municipal estoppel claim. We affirm.

The trial court found, or the record reflects, the following facts. The plaintiff owns a 4.2-acre parcel in Rye. In the early 1990s, the parcel was part of a larger parcel owned by the Green family. The Green homestead is still standing, and the plaintiff resides there. When the Greens still owned the property, one of the Green brothers built a tool shed in the rear of what is now the plaintiff's parcel. The tool shed was originally a small, one-story structure with no chimney or heating unit. In the mid-1960s, it was improved by the addition of a tiny kitchen, bathroom, dormered second half-story, electrical service, a connection to a water well, and an underground holding tank for waste water. The tool shed/cabin was not used as a residence at any time before the Town adopted its first zoning ordinance in 1953. That ordinance was the first to prohibit more than one dwelling per lot.

There is no evidence that the tool shed/cabin was used as a dwelling until the 1970s. The trial court could not determine based upon the evidence before it whether the tool shed/cabin was used at all, let alone as a dwelling, between 1979 and 1986. In 1986, the son of the then owners of the parcel moved into the tool shed/cabin. He lived there until 1988 or 1989.

The tool shed/cabin was next used as a dwelling in 1991 when the then owners rented it out as a second dwelling. The Town building inspector issued a cease and desist letter to those owners, explaining that using the tool shed/cabin as a second dwelling violated the ordinance. The letter stated that the tool shed/cabin "is not, nor has it ever been, a legal dwelling," and, thus, "could not be legally occupied." Although the water district disconnected the tool shed/cabin from the water line, the owners reconnected it. The owners ignored the cease and desist letter and rented out the cabin to multiple tenants from 1991 to 2000, when they sold the parcel to the plaintiff's immediate predecessor-in-title, Robert MacLeod.

In 2003, one of MacLeod's neighbors complained that MacLeod had installed a mailbox for the tool shed/cabin. At that time, MacLeod was renting the tool shed/cabin to tenants. The building inspector met with MacLeod and inspected the tool shed/cabin. Thereafter, the building inspector sent a letter to the complaining neighbor dated July 8, 2003, which stated:

> Mr. Mac[L]eod brought to my attention that when he bought this property, his attorneys researched the legitimacy of the second dwelling and discovered that in 1991, this issue had come in the town as a cease and desist.
>
> It was determined that the structure and use of the second dwelling was established prior to zoning . . .
>
> Therefore, . . . the second dwelling is a legal use and may continue indefinitely.

The letter was sent to the Town Administrator and to the Board of Selectmen. A copy of the letter was also placed "in the Town's file." There is no evidence, however, that the letter was ever sent to MacLeod. Nor is there any evidence that the building inspector ever informed MacLeod otherwise that the tool shed/cabin's use as a second dwelling was a grandfathered, nonconforming use.

In 2005, MacLeod obtained an opinion letter from an attorney regarding the lawfulness of using the tool shed/cabin as a second dwelling. The attorney explained that, in 1991, he had researched the lawfulness of using the tool shed/cabin as a second dwelling for its then owner and had discovered that "the second dwelling unit has been present on the lot since some time in the early 1940's, before the enactment of zoning by the [T]own . . . in 1953." He also indicated that the prior owner of the property had done her own research and had discovered that the tool shed/cabin "had been used continuously as a dwelling unit until around 1989." He explained that in 1991, he had informed the building inspector that the tool shed/cabin qualified as a prior, non-conforming use, but that the building inspector had not responded to this information. He stated that he understood that MacLeod had given the same explanation to the current building inspector, and that the building inspector had not responded to MacLeod's explanation. The attorney opined that "[b]ased on the fact that two different building inspectors . . . apparently accepted the explanation that the [tool shed/cabin] qualified as a prior non-conforming use, it was reasonable to conclude that" using the tool shed/cabin as a second dwelling did not violate the Town zoning ordinance. The attorney's letter did not refer to the July 8, 2003 letter from the building inspector.

The trial court inferred from the attorney's letter that the attorney did not know about the July 8, 2003 letter and that MacLeod did not know about the

2

letter, either. The court stated: "If counsel had been aware of the letter then (a) he would have mentioned it and (b) he would not have said MacLeod never heard back from the [T]own."

MacLeod sold the parcel to the plaintiff in 2006. MacLeod sent the plaintiff's realtor a copy of the attorney's 2005 letter. The realtor then exchanged emails with the building inspector, who informed the realtor that the tool shed/cabin could be used by the owners as a guest house, but could not be used "for anything other than occasional use" and could not be rented.

In 2008, the building inspector issued an enforcement order to the plaintiff, noting that it had come to her attention that the tool shed/cabin was being rented. The building inspector informed the plaintiff that the tool shed/cabin "is an illegal structure that has a history of enforcement," and that it could be used only occasionally as a guest house for family, and that money could not be collected for its use. The building inspector stated: "This structure is not legal, does not have a legal septic system, and can not [sic] be used as a dwelling."

In January 2009, the building inspector advised the plaintiff that the 2005 attorney opinion letter did not provide adequate grounds for his continued rental of the cabin. The building inspector explained that in order for the use of the tool shed/cabin to be lawful as a pre-existing, nonconforming use, "the use must be grandfathered, and there is no proof that [the tool shed/cabin] was used as a dwelling pre-zoning, only that the structure existed." The building inspector informed the plaintiff that he could: (1) cease and desist using the tool shed/cabin as a second dwelling; (2) obtain the necessary variances; or (3) appeal her enforcement order to the ZBA. The plaintiff ignored the building inspector's enforcement order and continued to rent the tool shed/cabin.

In September 2015 and April 2016, a new building inspector issued two virtually identical notices to the plaintiff regarding his continued use of the tool shed/cabin as a second dwelling, requiring him to vacate the tool shed/cabin, remove its kitchen and bathroom, and schedule an inspection to prove compliance. The building inspector issued a third notice to the plaintiff in July 2016. The plaintiff responded, through counsel, that the prior inspector's July 8, 2003 letter, which was sent to the complaining neighbor, but not to the plaintiff's predecessor-in-title, constituted a binding "thirteen-year[-]old determination of the legality" of using the tool shed/cabin as a second dwelling. The building inspector issued a fourth and final notice of violation on November 1, 2016, alleging the same violations as the prior three notices.

The plaintiff appealed the November 1, 2016 notice of violation to the Town's zoning board of adjustment (ZBA), which upheld it. The ZBA found that "neither the use nor the structure of the second dwelling on the lot was

'grandfathered,'" and, therefore, the tool shed/cabin "and its use are not exempt from the present zoning regulations." The ZBA further found that the tool shed/cabin violated the Town's building code because it lacked an individual sewage disposal system and was prohibited by the Town zoning ordinance because the tool shed/cabin is located within the Wetlands Buffer. The ZBA also denied the plaintiff's requested variances.

The plaintiff appealed the ZBA's decisions to superior court and sought a declaratory judgment that the Town was precluded from enforcing its zoning regulations and building code under the doctrine of municipal estoppel. The plaintiff's actions were consolidated in the superior court. The parties agreed to waive their rights to an evidentiary hearing on the plaintiff's municipal estoppel claim and agreed that the trial court could decide the claim based upon the certified record of the ZBA proceedings and other specified documents.

Following a non-evidentiary hearing, the trial court upheld the ZBA's decisions and ruled in favor of the Town on the plaintiff's municipal estoppel claim. The plaintiff has appealed only the superior court's ruling on his municipal estoppel claim.

The doctrine of municipal estoppel is an equitable doctrine that has been applied to municipalities "to prevent unjust enrichment and to accord fairness to those who bargain with the agents of municipalities for the promises of the municipalities." Sutton v. Town of Gilford, 160 N.H. 43, 58 (2010) (quotation omitted). The elements of municipal estoppel are:

> first, a false representation or concealment of material facts made with knowledge of those facts; second, the party to whom the representation was made must have been ignorant of the truth of the matter; third, the representation must have been made with the intention of inducing the other party to rely upon it; and fourth, the other party must have been induced to rely upon the representation to his or her injury.

Id. (quotation omitted). Moreover, a party's reliance upon the representation must be reasonable. Id. Each element of estoppel requires a factual determination. Id. The party asserting estoppel bears the burden of proving the elements of the doctrine. Turco v. Town of Barnstead, 136 N.H. 256, 261 (1992). "While municipal corporations have long been subject to estoppel, the law does not favor its application against municipalities." Id. (citations omitted). "Accordingly, the doctrine is applied against a municipality with caution and only in exceptional cases under circumstances clearly demanding its application to prevent manifest injustice." Town of Seabrook v. Vachon Management, 144 N.H. 660, 666 (2000) (quotation omitted). We will uphold

4

the trial court's decision regarding municipal estoppel unless it is unsupported by the evidence or erroneous as a matter of law. Turco, 136 N.H. at 261.

In ruling on the municipal estoppel claim, the trial court rejected the plaintiff's assertion that he relied upon the July 8, 2003 letter from the building inspector to the complaining neighbor. The trial court found that the letter was not sent to MacLeod (the plaintiff's predecessor-in-title) and that the documents in the record "compel[] the inference that neither . . . MacLeod[] nor [the plaintiff], who purchased the property from [him], were ever aware of the letter until [the plaintiff] [later] stumbled across it." The court found that because the plaintiff "knew nothing of the building inspector's 2003 letter to the neighbor when he purchased the property, he could not have relied on the representations in that letter in making his purchasing decision."

The plaintiff's primary argument on appeal is that he "carried out his own due diligence and inspected the property and reviewed the property file," which contained the July 8, 2003 letter, "as part of his preparation to purchase said property." He contends that he "reviewed the town record in and around May 24 2006 before closing on the home in August of 2006."

The record submitted on appeal does not support this assertion, however. There are no documents in the appellate record demonstrating that plaintiff saw or was aware of the July 8, 2003 letter before he purchased the subject property in 2006. At best, the appellate record demonstrates that at some point after the plaintiff sent an email to the building inspector on May 27, 2016, and before he sent an email to his attorney on August 11, 2016, the plaintiff discovered the July 8, 2003 letter "in the planning office records." Notably, the plaintiff does not refer to the July 8, 2003 letter in his May 27, 2016 email to the building inspector. In his August 11, 2016 email to his counsel, the plaintiff states that he read the July 8, 2003 letter "last week."

The plaintiff has appended to his brief a document that appears to show that, before purchasing the property, he had it inspected by "HouseMaster" on May 24, 2006. Because the Town does not argue otherwise, we assume that this document was part of the record submitted to the trial court. However, even so, proof that the property was inspected by an inspection company in May 2006 does not establish that the plaintiff saw or was aware of the July 8, 2003 letter at that time.

We have reviewed the plaintiff's remaining appellate arguments and conclude that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993). As the appealing party, the plaintiff has the burden of demonstrating that the trial court committed reversible error. See Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's well-reasoned order, the plaintiff's challenges to it, the relevant law, and the record submitted on appeal, we conclude that the plaintiff has not met that

5

burden.  See id.  Thus, the plaintiff has failed to establish that the trial court's municipal estoppel decision is either unsupported by the evidence or erroneous as a matter of law.  See Turco, 136 N.H. at 261.  We, therefore, uphold the trial court's determination that the doctrine of municipal estoppel does not bar the Town from enforcing its zoning regulations and building code.

Affirmed.

Lynn, C.J., and Hicks, Bassett, and Donovan, JJ., concurred.


**Eileen Fox,**
**Clerk**
